# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT NORTH DAKOTA
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Dennis James Gaede, | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| James A. Podrebarac, Leann Bertsch, | ) | |
| Warren Emmer, Tim Schuetzle, | ) | Case No. 1:10-cv-070 |
| and Kathy Bachmeier, | ) | |
| | ) | |
| Defendants. | ) | |

Before the court is defendants' Motion for Summary Judgment (Doc. No. 24). For the reasons set forth below, it is recommended that defendants' motion be granted and plaintiff Gaede's complaint be dismissed with prejudice.

## I.  BACKGROUND

Gaede is an inmate at the North Dakota State Penitentiary ("NDSP"). Defendants Podrebarac, Bachmeier, and Emmer are all NDSP employees. Dr. Podrebarac is the prison dentist; Bachmeier is the Medical Director; and Emmer is the Director of the Adult Services Division. Defendant Schuetzle was the NDSP Warden during part of the time relevant to this action; he retired at the end of April 2010. Defendant Bertsch is the Director of the North Dakota Department of Corrections and Rehabilitation ("DOCR"). She has supervisory responsibility for all of North Dakota's correctional facilities, including the NDSP, and is the final decision-maker for inmate grievance appeals.

Gaede claims he fractured a tooth on a piece of shell in a breaded oyster that was served to him at the NDSP in March 2009. He claims he requested a crown and root canal to repair the tooth but was advised by Dr. Podrebarac that extraction was his only option per prison policy.

Gaede filed an administrative grievance over Dr. Podrebarac's refusal to provide him with a crown and root canal. When that was unsuccessful, he filed this § 1983 action claiming that the defendants' refusal to repair his tooth violated his Eighth Amendment rights. He sues the defendants in their official and individual capacities. He seeks damages in the amount of $75,000. He also requests injunctive relief requiring the defendants to: (1) provide him with a root canal and crown, and (2) change the NDSP's dental policies so that others can receive the same treatment. (Doc. No. 5).

Defendants deny any Eighth Amendment violation. They also claim both Eleventh Amendment and qualified immunities. (Doc. No. 15).

The time deadlines for discovery and disclosure of expert witness opinions have passed.

## II. STANDARD OF REVIEW

The following well-established principles govern the court's consideration of the defendants' motion for summary judgment:

> Summary judgment is appropriate only when the pleadings, depositions and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Such a showing shifts to the non-movant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d (1986). The non-movant "must show there is sufficient

evidence to support a jury verdict in [her] favor." Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir.1999). "Factual disputes that are irrelevant or unnecessary will not be counted," Anderson, 477 U.S. at 248, 106 S.Ct. 2505, and a mere scintilla of evidence supporting the nonmovant's position will not fulfill the non-movant's burden, id. at 252, 106 S.Ct. 2505.

Uhiren v. Bristol-Meyers Squibb Company, Inc., 346 F.3d 824, 827 (8th Cir. 2003); see also Scott v. Harris, 550 U.S. 372, 380-81 (2007).

## III. DISCUSSION

### A. Summary of the record evidence

Gaede was first seen by Dr. Podrebarac on March 31, 2009, for the fracture of his #4 tooth, allegedly caused by biting on an oyster shell. The notes on Gaede's dental chart for this visit reflect that a significant portion of his #4 tooth was missing and that Dr. Podrebarac repaired it using a composite filling. (Doc. No. 25-1, p. 6). Although not reflected in the notes, Dr. Podrebarac and Gaede agree this was intended at the time to be a temporary fix.[1] (Doc Nos. 25-1, p. 2 & 26, p. 4).

Gaede did not seek further treatment until he lost the temporary filling at the end of January 2010, some ten months later. He was seen by Dr. Podrebarac on February 10, 2010. According to Dr. Podrebarac, the #4 tooth had fractured further and lost additional mass. (Doc. No. 25-1, pp. 1-2). Dr. Podrebarac reported in his treatment notes:

> 4 has ca 1/4 of palatal cusp remaining and evidence of fx mesiodistally at 'pulpal floor' of fractured root area

---

[1] The fact the filling was considered temporary raises questions regarding what the prognosis for the tooth was when it was first fractured (including whether it could have then been successfully crowned) and what, if anything, was discussed about future treatment. The record is silent as to these matters. According to the record before the court, the next thing that happens is that Gaede lost his temporary filling some ten months later and it was only then that he complained about the fact that Dr. Podrebarac would only fill the tooth with another temporary filling or extract it and would not provide him with a crown and root canal. By this time, the evidence is that the tooth had fractured further. The matters are covered in more detail *infra*.

3

(Doc. No. 25-1, p. 19). The notes then goes on to state that Dr. Podrebarac recommended extraction, which Gaede refused, and that Gaede requested another temporary filling to get him through an upcoming court hearing, which Dr. Podrebarac accommodated. (Id.).[2]

Immediately following the February 10, 2010, visit, Dr. Podrebarac sent an e-mail to defendant Bachmeier, who, as noted earlier, is the NDSP's Director of Medical Services and an RN by training. In his e-mail, Dr. Podrebarac stated:

> Treated Mr. Gaede today, ending at ca 1250
> Tooth #4 had composite 'crown' placed 03-31-2009
> This 'crown' and some tooth fractured recently.
> Remaining structure is root and ca 1/3 palatal cusp.
> Xray show likely external resorption of root, making it shorter and is indicative of some inflammatory process (technically it is "inflammatory resorption")
> 4 also has apparent fracture extending mesio-distally along surface of root. This alone is basis for extraction
> Pt declined recommended extraction desiring only temporary filling to alleviate dentinal sensitivity.
> Provided temporary restoration with caveat of his denying my recommended tx and this filling will only alleviate dentinal sensitivity but will not address other issues.

(Doc. No. 25-1, p. 14). Defendant Bachmeier responded by stating, in relevant part, that, "We will support your decision with Offender Gaede." (Id.).

On or about March 4, 2010, Gaede filed an administrative grievance contesting the treatment that was offered for his fractured tooth. He stated he had requested a crown and root canal during his last visit with Dr. Podrebarac but was advised this was not available per prison policy and that extraction was the only option. He demanded that the tooth be repaired, arguing that the NDSP's

---

[2] Gaede claims it was during the February 10, 2010, visit that he requested his tooth be repaired with a permanent crown in lieu of extraction and that Dr. Podrebarac responded by stating this was not available under the NDSP dental policy. It is not clear whether Dr. Podrebarac would dispute that this conversation occurred. However, it seems likely that some conversation took place given the immediate e-mail from Dr. Podrebarac to defendant Bachmeier following the February 10, 2010, visit and the administrative grievance that Gaede filed in early March 2010 in which he did make a request for a crown and root canal.

policy of not providing crowns was unconstitutional and that it should be responsible for repairing the tooth because the fracture was caused by its sub-standard food.³ (Doc. No. 25-2, p. 7).

Defendant Bachmeier provided the NDSP's response to Gaede's grievance, writing the following on March 11, 2010:

> Per policy of DOCR, crowns and root canals are not completed. Your situation is not life threatening or considered a medical necessity. You can live life without a tooth. Many of us in the community do that! You are not being refused dental care. The dental department is willing to help you. Dentist says your tooth can't be restored! You need it pulled.

(Doc. No. 25-2, p. 7). Apparently, Dr. Podrebarac was also asked for his input. The next day he prepared a memorandum dated March 12, 2010, in which he stated:

> Pt kite to DMS dated 2-8-10 stating "my tooth is broken" resulted in a visit 02/10/2010 noting a 'composite crown' was placed 03/31/2009. As pt stated, this 03/31/2009 tx was considered temporary given the minimal tooth structure evident on 03/31/3009. The 02/10/2010 visit noted additional tooth fracture leaving ca. 1/3 of palatal cusp with the entire buccal cusp being absent (there are two cusps of approximately equal volume). Radiograph exhibited external resorption of root. Mesio-distal fracture of line of tooth #4 was also visualized. Recommended tx was to remove tooth #4. Pt declined recommendation and requested temporary tx to alleviate dentinal sensitivity. I acceded to pt wishes.
>
> Pt grievance dated March 4, 2010 demands crown. He received a composite crown on 03/31/2009 in complete accordance with DOCR P/P. At present the tooth is not salvageable.
>
> It remains my professional opinion that tooth #4 is not restorable, despite the pt demands.
>
> Pt does state that he "wants this tooth crowned because it is the prisons fault for serving sub-standard food that caused it to break" but three does not appear to be policy addressing this particular assertion of the offender.

---

³ The only claim made in this case is an Eighth Amendment claim based on the failure to provide a crown and root canal.

(Doc. No. 25-1, p. 15). Whether Dr. Podrebarac's memorandum was provided to Gaede or whether it was merely for internal consumption is not entirely clear.

Unable to persuade defendant Bachmeier that his tooth should be crowned, Gaede then sought a "Step 2" review from the prison warden. Defendant Schuetzle responded by stating:

> I agree with the Step 1 response. You are not being denied dental care.

(Doc. No. 25-2, p. 8).

Gaede then appealed Warden Schuetzle's decision to defendant Bertsch, the Director of the DOCR. After reciting the history of how his tooth became broken and the refusal of prison staff to to provide dental treatment in the form of a crown and root canal, Gaede summarized his reasons for why the treatment decision of the NDSP should be reversed as follows:

> First, it is the DOC's fault that my tooth is broken for serving food with debris such as shell and bone chips in it. This is a common problem, however, Al Thompson continues to serve this to us even after numerous dental complaints. In fact, several staff members also refuse to eat this food because of the same problem. Secondly, the DOC is not providing proper dental care by denying inmates root canals and crowns as are a part of normal dental procedures, especially when someone is in pain and there is eminent risk of infection and other health problems exist. This has been decided in numerous court cases as two were cited in the step 2 grievance to the warden. All that I am asking for is that this tooth be repaired properly with a root canal and crown, which is what should have been done in the beginning. I am even willing to pay the deductable as we used to like when I had two other teeth crowned in the past. I just don't want to lose a tooth that doesn't need to be extracted; I only want it fixed so I can eat and sleep properly again.

(Doc. No. 25-2, p. 9). Defendant Bertsch denied the appeal in a letter to Gaede dated April 16, 2010, stating:

> You filed a step one grievance dated March 4, 2010, regarding a dental matter. In the step 1 response, Medical Director Kathy Bachmeier advised that the situation you described was not life threatening or considered a medical necessity. She further stated that you were not refused dental care and per policy, DOCR does not provide crowns or perform root canals. She further added that the dentist said the tooth cannot be restored and needs to be pulled. You filed a step two grievance dated

6

> March 22, 2010. Warden Schuetzle replied that you are not being denied dental care. He stated that he agreed with the step 1 response. You appealed to the Director of Corrections and Rehabilitation.
>
> You were provided with dental care. The institution has established protocols regarding the types of dental work that will be provided and staff acted in accordance with those policies.
> Your appeal is denied.

(Doc. No. 25-2, p. 10).

Some nine months later, and apparently at Gaede's request, Dr. Podrebarac made a referral to Dr. Mansureh Iravani, a local oral surgeon. In a memorandum to Dr. Iravani dated December 10, 2010, Dr. Podrebarac stated the following:

> Pt had composite buildup tooth #4 which consequently fx leaving root that appears externally resorbed.
> DOCR does not provide endodontic therapy or fix prosth, although root #4 appears not to be amendable to any treatment.
> I have recommended removal of tooth 4, but patient refused, initially desiring a crown then adding a "root canal" along with the crown.
> Patient filed a complaint against me with the NDSBDE which was consequently dismissed.
> Patient then initiated federal court litigation against the NDDOCR policy in an apparent attempt to provide comprehensive care for all 1,400 offenders who come through the system annually. He has also attempted to join with John Greywind in litigation.
> Patient states today that he wants to see "oral surgeon" and remove tooth #4 if she says it is needed.
> If you would be so kind to evaluate this patient I would be much obliged.
> Thank you.

(Doc. No. 25-1, p. 17).

However, before Gaede was seen by Dr. Iravani, he again lost his temporary filling and was seen by Dr. Podrebarac on May 10, 2010. Dr. Podrebarac's notes for the May 10, 2010, visit state the following with respect to the condition of the tooth at that time:

> Appearance of root similar to 2-2010 with addition of buccal root has lost some structure, possibly from forceful debonding of prior composite.

(Doc. No. 25-1, p. 23). During that visit, Gaede requested another temporary filling pending his court challenge to the prison's dental policy and Dr. Podrebarac accommodated that request by again filling the tooth with another temporary filling.

Gaede was seen by Dr. Iravani shortly after Dr. Podrebarac's May 10, 2010, examination and treatment. In a report dated May 16, 2011, Dr. Iravani stated the following regarding her evaluation:

> 47 year old WM (inmate) with fractured #4. Wants to have tooth restored. "There is a lawsuit because there have been a lot of broken teeth cause of had things in our food."
> Patient states he was biting on a fried oyster when the tooth broke.
> Med hx reviewed. See chart.
> PE: no facial swelling. No trismus. Large composite restoration #4. No sensitivity to percussion. No drainage fistulas.
> Panorex: large restoration #4. No periapical radioluency appreciated
> A/P: #4 restorable? Discussed limitations of my clinical and radiographic examination. Patient made aware that I am an oral surgeon. I do not determine restorability as well as a general dentist. In my opinion, the tooth can most likely be restored with a crown but I do not know the condition of the tooth under the current restoration. He would need a detailed examination by a general dentist. Per Dr. Podrebarac the tooth as external root resorption therefore is not restorable. His opinion would over-ride by gross examination and findings.
> Also discussed that the tooth may have fractured due to the condition of the tooth prior to the trauma. Pt. states there was nothing wrong with the tooth. "I still have the broken piece."

(Doc. No. 25-1, p. 18).

In response to the defendants' motion for summary judgment, Gaede claims that Dr. Iravani told him during her evaluation that she would not extract his tooth if he was a walk-in patient off the street and that the tooth could be crowned in her opinion. He also points to the fact that the temporary fillings have stayed in place for almost year at a time and claims this is evidence of sufficient structure for a permanent crown. Finally, he argues that Dr. Podrebarac's claim that the root fracture has seriously compromised his tooth is questionable given that he has been able to chew

8

with the tooth while it has been temporarily filled and that no abscesses have developed. At the very least, according to Gaede, there is a fact issue regarding the tooth's restorability.[4]

Defendants have proffered evidence indicating that Gaede has sufficient other teeth to chew his food if tooth #4 is extracted. Gaede has not contested this evidence. Defendants contend that restoration under these circumstances is not a medical necessity. (Doc No. 25-1, pp. 3-4 & 6).

### B. Eleventh Amendment immunity

A lawsuit against state employees in their official capacities is the same as suing the state, which has immunity under the Eleventh Amendment for any claims for damages in an action brought pursuant to 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332 (1979); Edelman v. Jordan, 415 U.S. 651 (1974); Monroe v. Arkansas State University, 495 F.3d 591, 594 (8th Cir. 2007); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999); see also Kentucky v. Graham, 473 U.S. 159, 166-167 (1985) (discussing distinctions between individual and official capacity claims). Also, a state and its agencies are not proper party defendants as they are not "persons" as defined by § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 & 70 (1989); Alsbrook v. City of Maumelle, 184 F.3d at 1010.

---

[4] Gaede's response is problematic for several reasons. First, he has not sworn under oath to the facts that he offers that are otherwise undocumented. However, given that Gaede is proceeding *pro se*, the court would likely give him an opportunity to correct this, if it was material, by allowing him to either submit an affidavit or resubmit his brief with an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 attesting to the facts for which he has personal knowledge. See, e.g., Sutherland v. St. Lawrence, No. CV407-096, 2009 WL 2900270, **5-6 & nn. 14-15 (S.D. Ga. Aug. 17, 2009). Second, and more fundamentally, the oral statements attributed to Dr. Iravani are hearsay, and Gaede would need either a sworn statement from Dr. Iravani or a deposition from her before the evidence could technically be considered. Id. Finally, Gaede's opinions regarding restorability of the tooth are of no weight since he is not a trained professional.

On the other hand, the statements attributed to Dr. Iravani are consistent with what she stated in writing and could very well have been made. Further, the court needs to be sensitive to the fact that Gaede is proceeding *pro se* and his ability to obtain evidence from Dr. Iravani is limited by his lack of financial resources and imprisonment. At the end of the day, however, it does not make a difference. Even accepting the statements attributed to Dr. Iravani, the most that Gaede has proved is that there is a difference of professional opinion between she and Dr. Podrebarac over the efficacy of repairing his tooth. For reasons discussed later, this is not sufficient to support an Eighth Amendment claim.

In this case, the defendants are all state employees. Consequently, there is Eleventh Amendment immunity from any claim for damages against the defendants in their official capacities.

C.  **Qualified immunity**

Qualified immunity shields governmental officials in their personal capacities from suit for money damages unless (1) they have violated a federal statutory or constitutional right, and (2) that right was "clearly established" at the time of the challenged conduct. E.g., Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests -the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). When qualified immunity is raised as a defense, the court has the discretion to decide which prong to tackle first - a point that the Supreme Court has recently clarified. Id. at 236.

Turning to the second prong, some courts have suggested that "extraction only" policies might violate the Eighth Amendment in certain circumstances, such as when they are motivated by reasons other than sound medical judgment, or have concluded that the issue is an open one. See, e.g., Stack v. McCotter, 79 Fed. App'x 383, 389.4 (10th Cir. 2003); Chance v. Armstrong, 143 F.3d 698, 703-04 (2d Cir.1998); Mitchell v. Liberty, No. 8-341-B-W, 2009 WL 33435, at **4-5 (D. Me. 2009); Heitman v. Gabriel, 524 F. Supp. 622, 627 (W.D. Mo. 1981). Other courts, however, have held that prisoners have no Eighth Amendment right to tooth restoration over extraction - at least when extraction will resolve the underlying dental problem and not seriously compromise the prisoner's health. See, e.g., James v. Pennsylvania Dept. of Corrections, 230 Fed.Appx. 195, 2007 WL 1231730, *1-2 (3d Cir. 2007) (unpublished *per curiam* decision); Koon v. Udah, No. 8:06-2000,

2008 WL 724041, at *7 (D.S.C. Mar.17, 2008); Wilkens v. Ward, No. Civ-05-254-M, 2007 WL 2407082, at *6-7 (W.D. Okla. Aug. 22, 2007); Del Muro v. Fed. Bureau of Prisons, No. 5:03-CV-214-B, 2004 WL 1542216, at * 3-4 (N.D. Tex. July 8, 2004); Kopera v. Cook Cnty. Bd. of Com'rs, 1994 WL 577238, No. 93-C-3934, at *5 (N.D. Ill. Oct. 18, 1994); see also Brathwaite v. Corr. Med. Servs., 630 F. Supp. 2d 413 (D. Del. 2009).

The Eighth Circuit has yet to explicitly weigh in on this issue. In Moore v. Jackson, 123 F.2d 1082 (8th Cir. 1997), the court overruled a district court's grant of summary judgment in favor of prison officials and allowed a prisoner's Eighth Amendment claim to proceed in a case where treatment for a troubled tooth had been unreasonably delayed. In its discussion of the seriousness of the prisoner's medical condition, the court noted that, in addition to the evidence of pain suffered by the prisoner during the delay in treatment, there was also evidence that the delay eliminated the possibility of restoring the tooth and ensured extraction. Id. at 1087 n.3.

In Davis v. Norris, the Eighth Circuit affirmed the dismissal of an inmate's claim that jail staff had exhibited deliberate indifference to his serious dental needs by denying him a root canal, stating that a disagreement over a particular type of treatment did not give rise to an Eighth Amendment claim. Davis v. Norris, 198 F.3d 249 (Table), 1999 WL 1006437, at *1 (8th Cir. 1999). However, in that case, there were competing recommendations from two dentists. One dentist had recommended a root canal and another extraction. Arguably, the case did not involve a situation where restoration clearly would have been a preferred course of treatment by practicing dentists, but was not available because of an extraction-only policy.

More recently, in Meuir v. Greene County Jail Employees, 487 F.3d 1115 (8th Cir. 2007), an inmate sought injunctive relief seeking to end a county jail's unwritten extraction-only policy on

11

the grounds that it violated the Eighth Amendment. Rather than stating that the inmate had no Eighth Amendment claim as a matter of law, the Eighth Circuit disposed of the challenge to the extraction-only policy based on a lack of standing. The court observed that the inmate had been transferred to another facility where his dental ailments had been treated without complaint.

Given the foregoing, it is apparent that there is no "clearly established" Eighth Amendment right of prisoners to tooth restoration over extraction - at least when extraction would resolve the underlying dental problem and not create a serious health risk. In the recent case of Greywind v. Podrebarac, No. 1:10-CV-006, 2011 WL 4750962 (D.N.D. Sept. 12, 2011), *Order Adopting Report and Recommendation*, 2011 WL 4743751 (D.N.D. Oct. 5, 2011), this court upheld claims of qualified immunity by many of the same defendants for precisely this reason. Greywind, 2011 WL 4750962, at **6-8.

Here, the undisputed evidence is that Gaede has sufficient other teeth to eat with and that extraction will not pose a serious risk to his health. Further, Gaede does not claim that he offered to pay the cost of a root canal and crown, but was denied access to treatment by those who could provide it. Consequently, defendants are entitled to qualified immunity from any claims for damages against them personally.[5] See id.

---

[5] Gaede has not offered evidence indicating that defendant Emmer was involved in any of the decisions relating to his dental treatment. Hence, Emmer is entitled to dismissal for this reason as well. All of the remaining defendants, except Dr. Podrebarac, have also argued that they cannot be held personally liable based upon their reliance upon Dr. Podrebarac's judgment and because of the lack of *respondeat superior* liability under § 1983. These arguments do not need to be addressed given that they are entitled to qualified immunity for the reasons stated.

**D.    The lack of a triable Eighth Amendment claim with respect to the request for injunctive relief**

While Eleventh Amendment and qualified immunity dispenses with Gaede's claims for damages, they are not a defense to his claims for prospective injunctive relief.  E.g., Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.14 (1989); Ex parte Young, 209 U.S. 123, 159-160 (1908); Alsbrook v. City of Maumelle, 184 F.3d at 1010 & n.19; Campbell v. Arkansas Dept. of Correction, 155 F.3d 950, 962 (8th Cir. 1998).

Prison officials violate the Eighth Amendment "if they commit 'acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs.'" Meuir v. Greene County Jail Employees, 487 F.3d at 1118 (quoting Estelle, 429 U.S. at 106) (alteration in original).  Specifically, the inmate must show "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004) (citing Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)).  "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Taylor v. Bowers, 966 F.2d 417, 421 (8th Cir. 1992) (overruled on other grounds) (citing Randall v. Wyrick, 642 F.2d 304, 308 (8th Cir. 1981) & Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir. 1985)).

In this case, Dr. Podrebarac actively attended to Gaede's fractured tooth by providing a series of composite fillings for temporary relief and offering extraction as a permanent fix.  In other words, Gaede's complaint here is not the lack of attention, but rather the fact that prison officials would not provide him with a permanent crown and root canal in lieu of extraction.

While it does appear that Dr. Podrebarac was (and still is) constrained in his treatment options by the NDSP's "no crown policy,"[6] he also is of the opinion that restoration in the form of a permanent crown is unlikely to succeed. In support of this conclusion, he points to what he considers to be evidence of root fracture and resorption (*i.e.* a shortening of the root) along with the minimal remaining tooth structure. And, as outlined above, this is not an after-the-fact opinion expressed only after commencement of this case. Dr. Podrebarac expressed this opinion in February 2010 when Gaede first complained about his treatment options and then again in his written response to Gaede's administrative grievance.

The only admissible evidence that the tooth can be crowned with some chance of success, contrary to the opinion of Dr. Podrebarac, is the report of Dr. Iravani. As outlined earlier, Dr. Iravani stated she believed the tooth could be crowned, but qualified her opinion stating: (1) she did not have the opportunity to examine the tooth without the composite filling as did Dr. Podrebarac; and (2) that a practicing dentist would be in a better position to opine about restorability since her practice is confined to oral surgery. For these reasons, she concluded that Dr. Podrebarac's opinion should "over-ride my gross examination and findings." Consequently, even if Dr. Iravani's report is construed most favorably for Gaede, including drawing all reasonable inferences, the most it

---

[6] Defendants contend in their briefing that Dr. Podrebarac was free to make decisions based on professional judgment, even if contrary to NDSP dental policy. If by this defendants are suggesting Dr. Podrebarac was free to crown teeth when that would be the preferred practice among dentists treating the general public but contrary to NDSP dental policy, the record does not support that conclusion. The evidence is that the NDSP's "no crown policy" exists for a purpose, *i.e.*, to limit the dental care that is available and that Dr. Dr. Podrebarac is expected to follow the policy. This clearly is Dr. Podrebarac's understanding when he states in his affidavit testimony:
> Even if Gaede's tooth could hold a crown, DOCR policy prohibits crowns. The reason for the policy is that crowns are not medical necessities and are elective procedures of a cosmetic nature. The only situation where a crown would be a medical necessity is if the loss of the tooth would make it problematic for the individual to masticate food, because of the lack of other teeth.

(Doc. No. 25-1, p. 3). Likewise, the statements made by prison officials in response to Gaede's grievance indicate that they will enforce the "no-crown policy."

supports is the conclusion that her opinion as to the efficacy of a permanent crown is different from Dr. Podrebarac's,[7] with both opinions being within the realm of acceptable professional judgment.

Under these circumstances, there is no triable Eighth Amendment claim and Gaede's request for an injunction requiring the defendants to provide him with a crown and root canal fails on the merits.[8] See Davis v. Norris, 198 F.3d 249 (Table), 1999 WL 1006437, at *1 (8th Cir. 1999) (unpublished per curiam) (professional disagreement over dental treatment was not enough to establish an Eighth Amendment claim); cf. Nelson v. Shuffman, 603 F.3d 439, 448–49 (8th Cir. 2010) (mere disagreement over matters of expert medical judgment or over course of treatment does not rise to level of constitutional violation); Beck v. Skon, 253 F.3d 330, 333-34 (8th Cir. 2001) (defendants were not deliberately indifferent where plaintiff refused to comply with recommended treatment). And, that being the case, there is no need for the court to address the issue of whether the NDSP's "no crown" policy passes constitutional muster under different circumstances, such as when the efficacy of repairing the tooth using a crown is not reasonably in question. Cf. White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007) (refusing to decide whether a contract-attorney system provided meaningful access to the courts because the prisoner had not suffered an actual injury resulting from the alleged unconstitutional conduct and because of the policy against unnecessarily

---

[7] A permissible inference for purposes of summary judgment is that Dr. Iravani not only believes that the tooth can be crowned, but also that it would be worthwhile making the attempt to do so, putting aside the issue of who would pay for it and the NDSP's "no crown policy." It seems doubtful she would have expressed an opinion that the tooth could be crowned otherwise, particularly in view of the memorandum sent to her by Dr. Podrebarac. Also, while Dr. Iravani states that deference should be given to the opinions and examination of a general dentist, she does have a dental degree in addition to her MD and obviously has substantial expertise.

[8] The undersigned is not aware of any authority holding that prison officials are required under the Eighth Amendment to offer dental treatment that has a limited chance of success, particularly when the failure to provide the treatment would not create a serious health risk. And here, Gaede does not dispute that extraction is an appropriate form of treatment if the tooth is not salvageable.

15

deciding constitutional issues); Martin v. Sargent, 780 F.2d at 1337 (prisoner cannot bring claim on behalf of other prisoners).[9]

## IV. CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is recommended that defendants' Motion for Summary Judgment (Doc. No. 24) be **GRANTED** and that Gaede's complaint be **DISMISSED WITH PREJUDICE**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 28th day of December, 2011.

>　　　　　　　　　　　　　　　*/s/ Charles S. Miller, Jr.*
>　　　　　　　　　　　　　　　Charles S. Miller, Jr.
>　　　　　　　　　　　　　　　United States Magistrate Judge

---

[9] The likelihood, however, is that the Eighth Circuit would conclude based on the authority cited earlier that there is no Eighth Amendment right on the part of prisoners to a crown at public expense in lieu of extraction, so long as extraction would appropriately address the underlying dental problem and would not create a serious health risk. That being said, providing the bare minimum of dental care allowable under the Eighth Amendment may not always be good public or penal policy. For example, it may be that repair of readily visible teeth of prisoners who eventually will be released would increase their chances of successful reintegration into society, particularly in terms of being able to land decent jobs. Also, it may be that providing subsidized repair is an effective incentive/reward for good institutional behavior. These types of judgments, however, are for others to make.